# Shamberg, Johnson & Bergman

### CHARTERED

LYNN R. JOHNSON
VICTOR A. BERGMAN
JOHN M. PARISI
SCOTT E. NUTTER
MATTHEW E. BIRCH
DAVID R. MORANTZ
DOUGLAS R. BRADLEY
DAVID C. DeGREEFF
JOHN E. SHAMBERG
  (1913-2009)

2600 Grand Boulevard
Suite 550
Kansas City, Missouri 64108-4627

Tel: (816) 474-0004
Fax: (816) 474-0003
www.sjblaw.com

Kansas Office:
Commerce Plaza I
7300 West 110th Street
Suite 700
Overland Park, KS 66210

September 20, 2010

**Via Facsimile 913 342-0603**
Mark A. Lynch
Holbrook & Osborn, P.A.
7400 West 110th Street, Suite 600
Commerce Plaza II
Overland Park, KS  66210

**Re:**   **Golden Rule Letter**
*Sandra H. Deya and Edwin D. Deya, individually and as Next Friends and*
*Natural Parents of EDD v. Hiawatha Community Hospital and Peter Rosa, M.D.*
In the United States District Court for the District of Kansas
Case No.  10-CV-2263 JAR/GLR

Dear Mark:

This letter is in follow-up to the discovery responses you have made, in other words a "Golden Rule Letter."  I will follow-up with a telephone call to you soon.

### Hiawatha Community Hospital's Answers to
### Plaintiffs' First Interrogatories

Interrogatory No. 2 – This seeks to determine who may have investigated the case and preserved or collected facts, including but not limited to risk management and peer review. Surely you are aware of the requirement of a privilege log for this type of thing pursuant to rule 26(b)(5).  I would also refer you to *Adams v. St. Francis Regional Medical Center*, 264 Kan. 144 955 P.2d 1169 (1998) which clearly states that the plaintiffs are entitled to all factual and material witnesses names that are included within those documents.  Id at 1188.  The *Adams* court followed the logic of the federal court in *Hill v. Sandhu*, 129 F.R.D. 548 (D.Kan. 1990), which held that documents provided to the peer review committee were not privileged because they did not delve into the mind of the committee.  This was essentially the same holding of the federal court in *Balk v. Dunlap*, 163 F.R.D. 360, 363 (D.Kan. 1995) which held that peer review and risk management privileges generally apply only to documents generated by or which reflect the work of the committee which generate the protected information.  My point is that

**Exhibit A**

Mark A. Lynch
Holbrook & Osborn, P.A.
September 20, 2010
Page **2** of **6**

we are entitled to know if the case was investigated, if facts were collected, by whom, and when.  It is only the committee's decision-making process, conclusions or final decisions that are not subject to discovery by the plaintiffs.

Interrogatory No. 3 — I never understand what it means that a defendant objects and then provides some information "without waiving the objection," as you have done here.  You did indicate that Julie Rosa, M.D. and somebody named either Tammy Schmitt or Tammy Schmitz, R.N. (see your attachment) are the people generally responsible for initiating the development of written policies or protocols, but I do not think you have answered the basic question for the three subjects included in Interrogatory No. 3.  I think these call for a yes or no, and then if it is a yes, you provide the rest of the information to the extent possible.  All you really did was tell me that there is a process, but you have completely ducked the substance of the interrogatory.

Interrogatory No. 6 — I assume that the attachment to the interrogatories which says Interrogatory No. 2, is really for Interrogatory No. 6.  Is that correct?

Interrogatory No. 10 — I have no problem with the fact that you have not been able to fully ascertain the answer, and as long as I have the answer before the depositions that would be fine.  Can you do that?

## Hiawatha Community Hospital's Responses to
## Plaintiffs' First Request for Admissions

My general problem with all of these is that you start with an objection to each, and you have not addressed the substance of the request in many instances which I will discuss below.

Request No. 1 — You did not admit or deny the proposition put forth.

Request No. 2 — You object that you don't understand the question, and then say that on the basis of your understanding you deny the request.  Perhaps this will wash out when I see the policies and procedures, but as the admission stands I cannot tell if it is really admitted or denied.  Can you provide your understanding of the term policies and procedures for purposes of your response?  My concern is you later seem to include "practices" in policies.  My interest is in written policies and procedures.

Request No. 4 — I just have the same problem with most of these.  The Request for Admission speaks to policies and procedures, and your answer talks about "written documents."

Request No. 5 — This one I don't think you admitted or denied at all.  Either there are policies and procedures on the discharge of newborns with jaundice or not.  You refer to "the practice," but that would not be what is referred to by policies and procedures, which I believe are written documents representing the considered judgment of the hospital administration on the subject.

Mark A. Lynch
Holbrook & Osborn, P.A.
September 20, 2010
Page 3 of 6


## Hiawatha Community Hospital's Responses to
## Plaintiffs' First Request for Production of Documents


 Request No. 7 – I know of no authority that says that bylaws, rules and regulations of a hospital are privileged in any way. Do you have some authority to that effect? It is your burden to establish any privilege you claim. *Sentry Insurance v. Shrivers,* 164 F.R.D. 255, 256 (D.Kan. 1996).

Request No. 8 – Incident reports, sentinel event reports, unusual occurrence reports and similar kinds of things that contain factual information are discoverable. Again, I think it is up to you to establish that they are privileged. As a practical matter I think it would be appropriate for you to say whether there are such documents or not so that we do not have to waste any time arguing about things that do not exist, if that is the case.

Request No. 9 – The way your response is stated, I cannot tell if there are such documents or not and, again, it doesn't pay to argue about things that do not exist. If there are such documents, some may well be protected from discovery, depending on what they are, when they were written, who wrote them, etc. You are a great guy but I am not satisfied to allow you to decide what is privileged and what is not, which is the reason for the privilege log. Mark, I am not talking about documents that would have been prepared by anybody in your office, just employees of the defendant.

Request No. 11 – You indicated an organizational chart "Will be produced." I have not yet seen what you are producing, but I hate to have these kinds of loose ends out there and trust you will get that to me.

Request No. 12 – As we discussed when I was at your office, I am aware of absolutely no authority that says policies, procedures, protocols, etc. are entitled to a protective order based on confidentiality or any other reason. I have sent you a copy of the order in the case of *Frame v. Salina Regional Health Center,* in the United States District Court for the District of Kansas, Case No. 07-2442-JWL on this very subject.

Request No. 13 – There is a claim in this case that the hospital administration failed to implement necessary policies and procedures. This is something that has been urged by the American Academy of Pediatrics and by the Joint Commission on the Accreditation of Hospitals and other national organizations. At the threshold, you need to say whether there are such documents or not so that, again, we do not have to argue about whether they are discoverable or not. Second, if there are such documents and you think they are privileged, then we need a privilege log so the court and not you can decide whether they are discoverable or not.

Mark A. Lynch
Holbrook & Osborn, P.A.
September 20, 2010
Page 4 of 6

Request No. 15 – The way you have responded leaves the door open for you to give me documents whenever. These are obviously critical issues in the case, so I would like to know whether there are such documents or not.

Request No. 17 – Involves personnel and peer review files of defendants Rosa and Shamburg. Surely you are not contending that everything the hospital has is privileged. Do we not even get to see the documentation of the privileges they held in April of 2009? Do we not get to see the records of continuing medical education? Can we start with those items?

Request No. 18 – You made a partial objection to the personnel files of the nurses. Frankly, I am willing to limit the request to those who attended to EDD, and forego those who attended to Sandra Deya. You indicated that you are going to be producing some of these materials, the only question is when.

Request No. 20 – Mark, would you please verify that my understanding of your response is correct. Between Dr. Rosa and Dr. Shamburg there have been 449 deliveries. Virtually all of those children would have developed an elevated bilirubin. Of the 449 deliveries, only one was discharged within 48 hours of birth. Of the 449 deliveries only one was discharged without a bilirubin level being ordered. If you are not inclined to clarify the response, then I am going to want to take the deposition of whoever provided the information. Also, am I safe in assuming that EDD is the "one" who was discharged without tests for bilirubin level being ordered?

Request No. 21 -- Your answer seems to indicate that there are no documents responsive to this request, but then you say responsive documents will be produced. I assume that is going to be produced now.

Request No. 22 – Again, since I don't have the documents as I am dictating this, I assume the labor and delivery log is in your possession and going to be produced forthwith.

Request No. 33 – Do you have some authority that indicates deficiency statements issued by a state agency are not subject to discovery or public disclosure?

Request No. 34 – Do you have any authority to the fact that the application for license to a Kansas public agency is not discoverable?

**Peter Rosa, M.D.'s Responses to**
**Plaintiffs' First Interrogatories**

Once again, as a general problem, I have trouble understanding objections followed by "without waiving the objection." Are there or are there not documents that would be identified in response to the interrogatory that have not been produced? If so, unless it is something between Dr. Rosa and his attorneys, that needs to be identified in a privilege log.

Mark A. Lynch
Holbrook & Osborn, P.A.
September 20, 2010
Page 5 of 6

Interrogatory No. 10 -- It is important to determine when Dr. Rosa and Dr. Shamburg were assigned outside counsel. I have been down this road before with KaMMCO. They have a very specific method of assigning counsel, and conversations between an insured and the insurance company, notes made by the insurance company, facts collected by the insurance company, etc., before the assignment of counsel to defend, are all discoverable under Kansas law. See *Heany v. Nibbelink*, 23 Kan. App. 2d 583, 932 P.2d 1043 (Kan. Court App. 1997), *Henry Enterprises, Inc. v. Smith*, 225 Kan. 615, 592 P.2d 915 (1979). The law as I understand it is that the initial investigation of a potential claim made by an insurance company before the commencement of litigation and not requested by or made at the guidance of counsel, is made in the ordinary course of business not in anticipation of litigation or for trial, and it is therefore discoverable. Thus, the date that KaMMCO was first notified is an important first step in that part of the discovery. The second step is to determine when counsel began to direct an investigation.

Interrogatory No. 11 -- Please see discussion of Hiawatha Community Hospital's response to Interrogatory No. 2.

Interrogatory No. 12 -- I am not aware of any law that says incident reports or unusual occurrence reports or sentinel event reports that may contain factual information are not subject to discovery. I would make the same request as I have on others; that is, if we are not talking about documents that exist please just tell me so we don't waste any time on an academic exercise.

Interrogatory No. 16 -- Would you please let me know the author or editor of each of the two books identified, and the edition? Thank you.

### Peter Rosa, M.D.'s Responses to
### Plaintiffs' First Request for Admissions

Mark I believe my comments are exactly the same as I made with regard to the hospitals responses.

### Peter Rosa, M.D.'s Responses to
### Plaintiffs' First Request for Production of Documents

Request No. 11 -- See my previous comments relating to the discoverability of insurance company investigative materials before the employment of counsel to direct the investigation.

Request No. 12 -- See Request No. 11.

Request No. 15 -- There was supposed to be a CV attached, but I do not have that.

Mark A. Lynch
Holbrook & Osborn, P.A.
September 20, 2010
Page **6** of **6**

Request No. 24 – What I am trying to get is the list of all CME courses Dr. Rosa has attended.  I agree that the request is not artfully written, but are you willing to produce his records of CME compliance without an additional request?

### Steffen Shamburg, M.D.'s Answers to
### Plaintiffs' First Interrogatories

Interrogatory No. 1 – See the discussion for Dr. Rosa.

Interrogatory No. 10 – See the discussion for Dr. Rosa.

Interrogatory No. 11 – See the discussion for Dr. Rosa.

Interrogatory No. 12 – See the discussion for Dr. Rosa and the hospital.

### Steffen Shamburg, M.D.'s Responses to
### Plaintiffs' First Request for Admissions

See the discussion of these same requests regarding the hospital.

### Steffen Shamburg, M.D.'s Responses to
### Plaintiffs' First Request for Production of Documents

Request No. 11 – See discussion related to Dr. Rosa and the hospital on the same subject.

Request No. 15 – No CV was attached to the response.

Request No. 24 – See discussion of the same request pertaining to Dr. Rosa.

Very truly yours,

SHAMBERG, JOHNSON & BERGMAN, CHTD.

Victor A. Bergman

VAB/gms