October 22, 2010

Victor Bergman
SHAMBERG, JOHNSON & BERGMAN, CHTD.
2600 Grand Boulevard, Suite 550
Kansas City, MO 64108

      RE:    **Deya v. Hiawatha Community Hospital, et al.**
               **United States District Court of Kansas Case No. 10-CV-2263 JAR/GLR**
               **Our File No.: 71000.175**

Dear Vic:

    This letter is in response your Golden Rule Letter, dated September 20, 2010.

**Hiawatha Community Hospital's Answers to Plaintiffs' First Interrogatories**

Interrogatory No. 2:

    We will provide a privilege log.

    Your characterization of the *Adams* case is not accurate. The *Adams* court did not state that plaintiffs are entitled to all factual and materials witnesses names that are included within peer review documents. *See Adams v. St. Francis Regional Medical Center*, 264 Kan. 144, 164 (1998). The *Adams* court held that documents generated by peer review or risk management personnel or committees, or documents that delve into the mind of peer review committees or officers, are protected. *Id.* The court merely held that although the documents at issue in that case were covered under the peer review and risk management privilege statutes, the plaintiff was able to have access to some documents <u>not generated by</u> the hospital but rather submitted <u>to</u> a peer review body. *Id.* at 164-66, 170, 173-74.

    In response to your theory that you are entitled to know facts relating to the existence of an investigation, the *Adams* case clearly states the Kansas Supreme Court's belief that the paramount concern of the privilege granted in the peer review statute is the protection of the mental processes of peer review bodies. Whether or not a peer review body made a determination that this case should

**Exhibit B**

Victor Bergman
October 22, 2010
Page 2

be investigated would disclose the mental processes of the peer review body.

All of that stated, and without waiving our objections, no peer review or risk management investigation was conducted regarding the facts alleged in the Complaint. We provide this information in a good faith effort to resolve this discovery dispute.

Interrogatory No. 3:

In response to your inquiry as to what it means when we state an objection yet provide some information without waiving the objection; it is an attempt to reasonably cooperate in good faith without waiving objections. Plaintiffs often attempt to spring "waiver traps." Such tactics have the unfortunate result of forcing defendants to be increasingly cautious regarding documents produced. Here, we are erring on the side of production in an attempt to facilitate a reasonably open exchange of documents while clarifying that we retain the right to assert the objections noted. As to our objection that the request is vague and ambiguous, we stand by that objection. Further, I note that we recently provided you with those policies and procedures that you have specifically requested.

Interrogatory No. 6:

You are correct that the exhibit relates to Interrogatory No. 6.

Interrogatory No. 10:

We will confer with our clients prior to the deposition and determine whether they have recollections of any such conversations.

**Hiawatha Community Hospital's Responses to Plaintiffs' First Request for Admissions**

Request No. 1:

Our objection as to vagueness and ambiguity is appropriate. We cannot, and are not required to, answer binary questions that are vague and ambiguous. We provided a reasonable good faith response directed at the substance of your request.

Request No. 2:

We repeat our response to Request No. 1. In an attempt to cooperate as much as reasonable, we gave a qualified response. As you are the party formulating the request, please provide us with your understanding of the terms "policies and procedures" for the purposes of your request. Would it not be more reasonable and efficient to address this at defendants' deposition?

Request No. 4:

Again, this request is similarly vague and ambiguous, and simply creates a vehicle by which plaintiffs can later define their terms in the manner most advantageous to plaintiffs, and in the process shoehorn defendants response to this request as an affirmation of plaintiffs' post hoc premises. Again, in an attempt to cooperate, we provided additional responsive information to address this request in a reasonable way. We did so in a manner that is wholly appropriate if plaintiffs' purposes are to gather discoverable information rather than place words into defendants' mouths.

Request No. 5:

We stand by our objection and response, and refer you to our responses regarding Request Nos. 2 and 4, above.

## Hiawatha Community Hospital's Responses to Plaintiff's First Request for Production of Documents

Request No. 7:

We stand by our objection, but as we stated, we are willing to produce the requested documents pursuant to a protective order. Are there documents under this category that you have requested and we have not yet provided?

Request No. 8:

As stated, your request would include hospital generated peer review and risk management reports. Hospital generated reports are exactly the type of documents that the Supreme Court has clarified are clearly subject to the peer review and risk management statutes. *See Adams*, 264 at Kan.,144, 164 (1998). We stand by our objection stated in this response.

Request No. 9:

In response to your inquiry, there is a document that was created by Christine Mueller after plaintiffs filed this lawsuit, after defendants retained outside counsel, and in response to a request from the risk manager for the hospital as part of an investigation in anticipation of litigation. This document was prepared on our about August 18, 2010. It relates to phone conversations and other

Victor Bergman
October 22, 2010
Page 4


interactions that Ms. Mueller had with the plaintiffs following EDD's birth. It is protected from discovery as trial preparation material, and is also privileged under the Kansas peer review and risk management statues.

Request No. 11:

　　　Please let us know if you feel that what we have produced is not satisfactory.

Request No. 12:

　　　We have produced those policies and procedures you requested. Please advise if you disagree.

Request No. 13:

　　　As our response noted, your request is inappropriately broad. That said, as to the written policies and procedures, please advise if you feel that there are policies and procedures that you have requested and we have not provided. You will have the opportunity at depositions to reasonably clarify whatever you mean by "efforts."

Request No. 15:

　　　We stand by our response.

Request No. 17:

　　　Your comment to the effect our objection suggests that all documents at the hospital are privileged is inaccurate. Your request expressly seeks the "peer review files." Those files are privileged, as our responses stated. We will inquire further with our clients as to whether they possess documentation of the privileges they held in April of 2009 and will produce records documenting their continuing medical education.

Request No. 18:

　　　Please advise if the documents we have provided thus far are not satisfactory to you.

Request No. 20:

　　　You did not inquire as to "elevated bilirubin." You inquired as to "hyperbilirubinemia." We stated our objection as to the vagueness and ambiguity of your use of the term "hyperbilirubinemia,"

Victor Bergman
October 22, 2010
Page 5

but nonetheless responded as best we could. We understand that you are correct that the "one" child to whom our response refers is EDD. However, to clarify, only one child developed pathologically elevated bilirubin after the child left the hospital. Further, as our response stated, virtually all children have elevated bilirubin in the first few days of life, and a great majority of children are discharged within 48 hours of birth. As to subpart (d) of your question, it is our understanding that the great majority of children were discharged without a bilirubin test being ordered, not just this one child.

Request No. 21:

We stand by our response.

Request No. 22:

Please advise if the documents we have produced are not satisfactory to you.

Request No. 33:

Please see K.S.A. 65-4925(a)(3).

Request No. 34:

Please see K.S.A. 65-4925(a) and (d).

**Peter Rosa, M.D.'s Responses to Plaintiffs' First Interrogatories**

Interrogatory No. 10:

We understand that this issue has been resolved. However, we disagree with your characterization of Kansas law on the discoverability of information gathered on behalf of defendant by a defendant's insurance company. In *Heany v. Nibbelink*, 23 Kan. App. 2d 583 (1997), the court held that, under the facts of that case, an investigation made prior to the commencement of litigation and not requested by or made under the guidance of counsel was made in the ordinary course of business rather than in anticipation of litigation. The *Heany* case did not strike down the statute which protects attorney-client and trial preparation materials. We have informed you of the date of the oldest documents in the KaMMCO files, which all post date the date that the litigation was commenced in this case.

Interrogatory No. 11:

Victor Bergman
October 22, 2010
Page 6

Please see our response to your comments regarding Hiawatha Community Hospital's response to Interrogatory No. 2.

Interrogatory No. 12:

Please see the prior responses regarding the risk management and peer review privileges. We will provide a privilege log.

Interrogatory No. 16:

We will contact our client to gather the requested information.

### Peter Rosa, M.D.'s Responses to Plaintiff's First Request for Admissions

You state that your comments are exactly the same as those you made with regard to the Hospital's responses to our requests for admissions. Our responses to your comments are also identical.

### Peter Rosa, M.D.'s Responses to Plaintiff's First Requests for Production of Documents

Request No. 11:

See our previous responses to your comments relating to the discoverability of insurance company investigative materials.

Request No. 12:

See above.

Request No. 15:

We will make sure that his CV is produced, if it has not already been produced.

Request No. 24:

Thank you for clarifying the meaning of your request. We will address this with our client and produce any records that are available that reflect CME compliance.

### Steffen Shamburg, M.D's Answers to Plaintiff's First Interrogatories

Victor Bergman
October 22, 2010
Page 7

Interrogatory Nos. 1, 10, 11, 12:

    Please refer to our responses to the discussions to which you refer in your letter.

**Steffen Shamburg, M.D.'s Responses to Plaintiff's First Request for Admissions**

See our corresponding responses to the discussions you reference in your letter.

**Steffen Shamburg, M.D.'s Responses to Plaintiff's First Request for Production of Documents**

Request No. 11:

    See our response to the discussion you reference in your letter.

Request No. 15:

    Again, if the CV has not already been produced, we will do so.

Request No. 24:

    See our response to the discussion you reference in your letter.

    Sincerely yours,

    HOLBROOK & OSBORN, P.A.

    /s/ Tucker L. Poling (for)

    By:    Mark A. Lynch

MAL:acl