IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SANDRA H. DEYA and EDWIN DEYA,
individually and as next friends and
natural parents of EDD,

                Plaintiffs,

v.                                                                  Case No. 10-2263-JAR/GLR

HIAWATHA HOSPITAL ASSOCIATION, INC.,
et. al.,

                Defendants.

## MEMORANDUM AND ORDER

Plaintiffs bring this medical malpractice action, alleging injuries to their newborn due to alleged failures by Defendants to detect and manage jaundice. The Court has before it Plaintiffs' Motion to Compel Defendants to Respond to Discovery (ECF No. 57). It seeks an order to compel Defendant Hiawatha Community Hospital[1] (hereafter "Hiawatha Hospital") to respond to a request for admission and to produce documents responsive to two requests for production. For the following reasons, the Court grants the motion in part and denies it in part.

**I.    Relevant Background**

Plaintiffs served their Request for Admission, First Interrogatories and First Request for Production to separate Defendants Hiawatha Hospital, Peter Rosa, M.D., and Steffen Shamburg, M.D. on July 21, 2010.[2] These Defendants served Plaintiffs with their respective Responses to Plaintiff's First Interrogatories, Responses to Plaintiff's First Requests for Production of Documents,

---

[1]Plaintiffs' Fourth Amended Complaint (ECF No. 56) changes the name of Defendant from "Hiawatha Community Hospital" to "Hiawatha Hospital Association, Inc."

[2]*See* Pls.' Notice of Service (ECF No. 22).

and Plaintiff's First Requests for Admissions on September 17, 2010.[3] After attempting to confer, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2, Plaintiffs filed the instant motion to compel on November 4, 2011.

## II. Specific Discovery Requests at Issue

The motion requests, presumably pursuant to Fed. R. Civ. P. 36(a)(6) and 37(a)(3)(B)(iv), that the Court compel Defendant Hiawatha Hospital to respond to Plaintiffs' First Request for Admissions No. 5, and produce documents responsive to Plaintiffs' First Request for Production Nos. 9 and 18.

### A. Request for Admissions No. 5

Plaintiffs' First Request for Admissions No. 5 asks Defendant Hiawatha Hospital: "Do you admit that, as of April 2009, [Hiawatha Hospital] did not have any policies and procedures on discharge of newborns with jaundice?"

Defendant Hiawatha Hospital served the following response:

> Objection. This request is vague and ambiguous as the term "policies and procedures" and the phrase "discharge of newborns with jaundice." Without waiving these objections, the practice was that the assessment and treatment, if any, of jaundice, including at the time of discharge from the hospital, was at the discretion of the treating physician based on his or her assessment of the newborn.

Plaintiffs argue that Defendant Hiawatha Hospital neither admitted nor denied if it has any policies and procedures, but simply responded about an unwritten practice. Plaintiffs ask that the Defendant be ordered to provide a categorical response to the request, one way or the other.

In its response to the motion, Defendant Hiawatha Hospital argues that Request for Admission No. 5 inappropriately seeks to force it to admit or deny a statement that contains terms

---

[3]*See* Defs.' Notice of Service (ECF No. 38).

that are open to subjective characterization. It previously requested that Plaintiffs provide their understanding of the terms "policies and procedures" for the purposes of their request. Plaintiffs refused to do so. This refusal reveals that the insistence upon a categorical response to a statement containing words and phrases that are more nuanced than categorical is argumentative, rather than a genuine attempt to gather facts. Defendant further argues that it is appropriate to require Plaintiffs to reasonably define their terms in this context. It should not be forced to place the words of Plaintiffs into its mouth to require either a flat admission or denial. To the extent that Plaintiffs actually seek factual information, rather than to force semantic characterizations, Defendant states that it provided responsive information to address the substance of the request.

Federal Rule of Civil Procedure 36 governs requests for admission. It permits a party to serve "a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."[4] A party responding to a request for admission must either admit or deny the truth of the matter asserted, or state in detail why it cannot truthfully admit or deny it.[5] Further, "[a] denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder."[6] The advisory committee notes to Rule 36 explain that requests for admission serve "two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with

---

[4] Fed. R. Civ. P. 36(a)(1).

[5] Fed. R. Civ. P. 36(a)(4).

[6] *Id.*

respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."[7] "The purpose of a request for admissions generally is not to discover additional information concerning the subject of the request, but to force the opposing party to formally admit the truth of certain facts, thus allowing the requesting party to avoid potential problems of proof."[8]

Rule 36(a)(5) permits a party to object to a request for admission. It also requires that party to state the grounds for the objection.[9] A party who objects to a request for admission or asserts an inability to admit or deny it has the burden of persuasion to justify its objection.[10] If the court finds the objections invalid or improper, it will address the sufficiency of any response.[11] When ruling on a motion to determine the sufficiency of answers or objections to requests for admission, the court must consider the phraseology of the requests as carefully as that of the answers or objections.[12] "Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served."[13]

---

[7] Fed. R. Civ. P. 36 advisory committee's note (1970 Am.).

[8] *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, Civ. A. No. 94-2395-GTV, 1995 WL 625744, at *1 (D. Kan. Oct. 5, 1995) (quoting *Hurt v. Coyne Cylinder Co.*, 124 F.R.D. 614, 615 (W.D. Tenn. 1989)).

[9] Fed. R. Civ. P. 36(a)(5).

[10] *Ash Grove Cement v. Emp'rs Ins. of Wausau*, No. 05-2339-JWL, 2007 WL 2333350, at *7 (D. Kan. Aug. 16, 2007).

[11] *Id.*

[12] *Id.*

[13] Fed. R. Civ. P. 36(a)(6).

A party objecting to a discovery request as vague or ambiguous has the burden to show such vagueness or ambiguity.[14] In responding to discovery requests, including requests for admission, the responding party should "exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized . . . ."[15]

Defendant Hiawatha Hospital has failed to meet its burden to show that the request is vague and ambiguous as to the term "policies and procedures" and the phrase "discharge of newborns with jaundice." Applying common-sense meanings to the challenged words, the Court finds the request neither vague nor ambiguous. Can a hospital in the State of Kansas–or in any other civilized state–seriously contend that the terms "policies," "procedures," "discharge," "newborns," and "jaundice" are beyond its ken? Does it not have an admission "policy" or "procedure"? Or a discharge "policy" or "procedure"? Or a "policy" or "procedure" that applies to its surgical facilities? Or its emergency ward? Or its intensive care facility? Does it not "discharge" patients? Has it never heard of "newborns" as perhaps human beings recently or only just born? Is "jaundice" outside its medical vocabulary?

The Court overrules this ill-chosen objection. Defendant's response that "the practice was that the assessment and treatment, if any, of jaundice, including at the time of discharge from the hospital, was at the discretion of the treating physician based on his or her assessment of the newborn" does not fairly meet the substance of the request as to whether the Defendant did or did not have in place policies or procedures. Defendant may either admit or deny the request. If its

---

[14] *See Payless Shoesource Worldwide, Inc. v. Target Corp.*, Civ. A. No. 05-4023-JAR, 2007 WL 1959194, at *23 (D. Kan. June 29, 2007) (party objecting to requests for admission has burden to show vagueness or ambiguity).

[15] *Id.* (quoting *McCoo v. Denny's Inc.,* 192 F.R.D. 675, 694 (2000)).

described "practice" was the policy or procedure of the hospital, it may say so. If not, it should say it was not. If it had no policies or procedures in place, it should say so. Rule 36(a)(4) itself permits a qualified response, if necessary. But it does not authorize a respondent to evade the request for admission with an answer to some imaginary, collateral question. The Court grants the motion to compel a response to Request for Admission No. 5.

### B. Request for Production No. 9

Plaintiffs also seek an order to compel Defendant Hiawatha Hospital to respond to their First Request for Production No. 9. Their briefing addresses only a single document, created by a Ms. Mueller, and referenced by Defendant in the conferring correspondence. Accordingly, the Court construes the motion as seeking only that document.

The Mueller document recounts phone conversations and other interactions between Christine Mueller, a registered nurse employed by Hiawatha Hospital, and Plaintiffs after the birth of EDD.[16] Plaintiffs contend that, because this document reflects conversations directly with them, it should be produced. They also argue that, to the extent the document contains facts, it should be produced pursuant to *Adams v. St. Francis Regional Medical Center*, 264 Kan. 144, 955 P.2d 1169 (1998); *Hill v Sandhu*, 129 F.R.D. 548 (D. Kan. 1990); and *Balk v Dunlap*, 163 F.R.D. 360, 363 (D. Kan. 1995).

Defendant describes the document as created by Ms. Mueller after Plaintiffs filed this lawsuit, after Defendants retained outside counsel, and in response to a specific request from the risk manager of Hiawatha Hospital as part of an investigation in anticipation of litigation. The document

---

[16]Ex. B. to Pls.' Mot. to Compel Defs. To Respond to Disc. (ECF No. 57-2) at 3-4.

describes phone conversations and other interactions that Ms. Mueller had with Plaintiffs after the birth of EDD. Defendant contends the document is privileged and should not be produced. It argues that Plaintiffs have shown neither substantial need for it nor inability to obtain the substantial equivalent by other means. Ms. Mueller purportedly prepared her notes from memory more than a year after the conversations occurred and well after Plaintiffs had retained their current counsel. As the document recounts conversations and interactions with Plaintiffs themselves, Defendant argues they and their counsel thus already have knowledge of the substantial equivalent of its content. Counsel for Plaintiffs have indicated their intent, furthermore, to depose Ms. Mueller in the near future, thus providing another means to discover her version of the conversations and interactions described in the document.

### 1. Attorney-client Privilege

Defendant originally objected to Plaintiffs' request as seeking information protected from discovery by the attorney-client privilege. A party resisting discovery based on a privilege has the burden of establishing that the privilege applies.[17] The party claiming the privilege must supply the court with sufficient information to enable the court to determine that each element of the privilege is satisfied.[18] To carry the burden, they must describe in detail the documents or information to be protected and provide precise reasons for the objection to discovery.[19] Defendant Hiawatha Hospital contends that the document was created by Ms. Mueller, a registered nurse in its employ, at the request of its risk manager, and is therefore privileged and should not be produced.

---

[17]*Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984).

[18]*Bennett v. Fieser*, No. 93-1004-MLB, 1993 WL 566202, at *2 (D. Kan. Oct. 26, 1993).

[19]*Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994).

7

The instant case is a medical malpractice action based on state law. Federal jurisdiction is based on diversity of citizenship and amount in issue.[20] Therefore, Kansas law defines the contours of privilege.[21]

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law."[22] "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[23] The privilege serves the client's need for legal advice, but it also serves the attorney's need to receive complete information in order to give the proper advice.[24]

Under Kansas law, the essential elements of attorney-client privilege are as follows: (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.[25]

---

[20] 28 U.S.C. § 1332.

[21] *See* Fed. R. Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.").

[22] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

[23] *Id.*

[24] *See id.* at 390.

[25] *In re Motor Fuel Temperature Sales Practices Litig.*, No. MDL 1840, No. 07-1840-KHV, 2010 WL 4226276, at *4 n. 9 (D. Kan. 2010) (citing *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 418, 997 P.2d 681, 689 (2000)).

The document at issue in the instant motion to compel was created by Ms. Mueller, a registered nurse employed by Defendant Hiawatha Hospital. It purportedly recounts conversations and interactions between Ms. Mueller and Plaintiffs. Defendant has failed to establish that the document is protected from discovery by the attorney-client privilege. The Court overrules the objection that the document is protected from discovery by the attorney-client privilege.

### 2. Risk Management Privilege

Defendant Hiawatha Hospital also asserts a risk management privilege for the document created by Ms. Mueller. Kansas has adopted a "risk management" privilege, set forth in K.S.A. 65-4925(a). This statute provides that "the reports and records made pursuant to K.S.A. 65-4923 or 65-4924, and amendments thereto, shall be confidential and privileged." Specifically included are the following:

> (1) Reports and records of executive or review committees of medical care facilities or of a professional society or organization;
>
> (2) reports and records of the chief of the medical staff, chief administrative officer or risk manager of a medical care facility;
>
> (3) reports and records of any state licensing agency or impaired provider committee of a professional society or organization; and
>
> (4) reports made pursuant to this act to or by a medical care facility risk manager, any committee, the board of directors, administrative officer or any consultant.[26]

Under K.S.A. 65-4925(a), "[s]uch reports and records shall not be subject to discovery, subpoena or other means of legal compulsion for their release to any person or entity and shall not be admissible in any civil or administrative action other than a disciplinary proceeding by the appropriate state licensing agency."

---

[26] K.S.A. 65-4925(a)

9

Few cases have addressed whether specific discovery is covered by K.S.A. 65-4925. In *Porter v. Synder*,[27] the court considered incident reports required by Kansas law to be filed by health care provider or employees with respect to any act which may be below the applicable standard of care or grounds for disciplinary action. The court found that the risk management privilege contained in K.S.A. 65-4925, did "not include incident reports which [were] not reports *of* the review committee, but rather [were] contemporaneous statements of fact relating to incidents which [were] reviewed *by* the committee. Thus, incident reports are distinguishable from the committee's reports and are not included within 65-4925(a)'s protection."[28] Under the plain meaning of K.S.A. 65-4925(a)(1), only reports *of* the review committee are protected; reports reviewed *by* the committee are not protected.[29]

In *Bennett v. Fieser*,[30] the court noted that after the *Porter* decision, K.S.A. 65-4925 was amended to include subsection (a)(4).[31] "As now worded, subsection (a)(4) clearly and unambiguously states that reports made pursuant to the risk management act to one of the entities set forth in the subsection are privileged."[32]

The Court finds that the document created by Ms. Mueller, recounting conversations between her and Plaintiffs and made at the request of the risk manager of Defendant Hiawatha Hospital, is

---

[27]115 F.R.D. 77, 78 (D. Kan. 1987).

[28]*Porter v. Synder*, 115 F.R.D. 77, 78 (D. Kan. 1987) (emphasis in original).

[29]*Id.*

[30]No. 93-1004-MLB, 1993 WL 566202, at *1 (D. Kan. Oct. 26, 1993).

[31]*Id.* (citing 1987 Kan. Sess. Laws Ch. 176 § 11 at 896-97).

[32]*Id.*

not covered by K.S.A. 65-4925(a)(4) as a report "made pursuant to this act to or by a medical care facility risk manager . . ." K.S.A. 65-4925, creating a privilege for "reports and records" of a risk manager, is incidental to K.S.A. 65-4923 and K.S.A. 65-4924. Subsection (a)(4) refers only to "reports made pursuant to this act to or by a medical care facility risk manager . . . ." These statutes deal with investigations and reviews of the conduct of health care providers and facilities for disciplinary purposes, e.g., the continued licensing of the facility or restrictions that may be placed upon it by its governing authority or by the state. They do not create a broader privilege for documents generated as part of an investigation for a different purpose, i.e., civil litigation arising from an incident of possible malpractice. The fact that the risk manager of the hospital requested the document does not change that. Her duties can extend beyond investigations, pursuant to the cited statutes. But that does not mean that every piece of paper the risk manager requests or possesses becomes a "record" or "report" that thus falls under the protection of the statutes.

The Mueller document, as described by the parties, is neither a statutory report nor statutory record created by the risk manager. It is simply an "incident report" of the content of conversations with the now-plaintiff parents, and thus outside the protection of the statutes. Although Defendant claims a risk-management privilege for the Mueller document, it has provided no convincing argument or information that qualifies it for the privilege. Its whole argument is that it was prepared in anticipation of the present law suit. There is nothing to suggest that the risk manager has received or used it for any other purpose. As the party invoking the privilege, Defendant has the burden to show that it applies. It has not met that burden. Accordingly, the Court overrules the objection that the Mueller document is protected from disclosure under the risk management privilege.

### 3. Work Product

The briefing[33] does not show that Hiawatha Hospital asserted an objection, based upon work product, in its response to Request for Production No. 9. Both the conferring efforts and briefing by counsel, however, address almost exclusively the question of whether the Mueller document qualifies for protection as work product, if not as part of risk management. Plaintiffs have made no suggestion, on the other hand, that Defendant has waived the objection. Nor did they file any reply memorandum to controvert its assertion that the Mueller document was prepared in anticipation of litigation and is work product, pursuant to Fed. R. Civ. P. 26(b)(3)(A), protected from discovery. Accordingly, the Court will treat any lack of an initial work product objection by Defendant as waived. And it will, therefore, address the question of work product and discoverability on the merits.

The work product privilege, first established in *Hickman v. Taylor*,[34] and later codified in Fed. R. Civ. P. 26(b)(3), protects from discovery all documents and materials prepared by an attorney, a party, or an agent of either, in anticipation of litigation. In diversity cases, work product protection is still governed by the uniform federal standard outlined in Fed. R. Civ. P. 26(b)(3).[35] To establish work product protection, the party seeking to invoke work product immunity must show that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared

---

[33]Neither party attached a copy of Defendant Hiawatha Hospital's response to Request No. 9, but instead quote the response in their briefing.

[34]329 U.S. 495 (1947).

[35]*See Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n. 10 (10th Cir. 1998) ("Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3).")

in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.[36] The party seeking to invoke work product immunity has the burden to establish all elements of the immunity and this burden can be met only by an evidentiary showing based on competent evidence.[37] To carry that burden, the objecting party must make a "clear showing" that the asserted objection applies.[38]

"Court looks to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product."[39] Materials assembled in the ordinary course of business or for other nonlitigation purposes are not protected by the work product doctrine.[40] To determine the applicability of the work product doctrine, the court generally needs more than mere assertions by the party resisting discovery that documents or other tangible items were created in anticipation of litigation.[41] The documents at issue must have been created based upon a request for legal advice, not just for a regular business purpose.[42] The advisory committee notes to the 1970 Amendments to Rule 26(b)(3) provide that "[m]aterials assembled in the ordinary course of

---

[36]*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007); Fed. R. Civ. P. 26(b)(3)(A).

[37]*McCoo v. Denny's Inc.*, 192 F.R.D. 675, 683 (D. Kan. 2000).

[38]*McCoo*, 192 F.R.D. at 683; *Ali v. Douglas Cable Commc'ns, Ltd. P'ship*, 890 F. Supp. 993, 994 (D. Kan. 1995).

[39]*Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*, No. 09-2656-KHV, 2010 WL 3880027, at *6 (D. Kan. Sept. 28, 2010); *Marten v. Yellow Freight Sys., Inc*., No. 96-2013-GTV, 1998 WL 13244 (D. Kan. Jan. 6, 1998).

[40]*Marten,* 1998 WL 13244 at *10.

[41]*Id.*

[42]*Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 498 (D. Kan. 1997).

business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."

Defendant Hiawatha Hospital has established the elements of work product for the document created by Ms. Mueller. It is a document. It was prepared for purposes of this litigation. Ms. Mueller, as an employee of Defendant, prepared it specifically in anticipation of this litigation. She did so at the request of the risk manager of the Defendant. Both the request and preparation of the document occurred after this lawsuit was filed and after Defendants had retained their outside counsel.

The inquiry, however, does not end there. Although a party shows the existence of work product, Federal Rule of Civil Procedure 26(b)(3)(A) allows discovery if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[43] The party attempting to pierce the work product protection by relying on the necessity exception bears the burden of proof and persuasion.[44] To justify disclosure, that party must show the importance of the information to the preparation of its case and the difficulty it will face in obtaining substantially equivalent information from other sources if production is denied.[45] The Court has broad discretion to determine whether the requisite showing has been made.[46]

---

[43] Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).

[44] *McCoo*, 192 F.R.D. at 684.

[45] *Id.*

[46] *Id.* (citing *In re San Juan Dupont Plaza Hotel Fire Litig.,* 859 F.2d 1007, 1019, 1021 (1st Cir. 1988)).

Plaintiffs have not shown a substantial need for the document. Nor have they shown an inability to obtain the substantial equivalent by other means, consistent with Rule 26(b)(3)(ii). The Court finds that the Mueller document is not subject to the requested discovery. Accordingly, it overrules the motion to compel its production.

C. **Request for Production No. 18**

Request for Production No. 18 asks Defendant Hiawatha Hospital to produce "[t]he personnel file and time records for each nurse, employee and/or agent providing any services, medical care and/or treatment concerning Sandra Deya and/or EDD from April 1 through April 4, 2009." Defendant objected to the request as follows:

> Objection. This request is overbroad, burdensome, and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. This request also seeks information protected from discovery by the risk management privilege. Without waiving these objections, this Defendant will produce redacted portions of the employment files of any employee, other than physician employees (see objection to Request No. 17, above) who rendered treatment or care to EDD from his birth until his discharge in April 2009.

Plaintiffs assert as one of their allegations of negligence against the defendant hospital that the nurses in attendance to EDD were not knowledgeable and not adequately trained and educated. They argue that personnel files of such individuals are routinely obtained in discovery, but have not been produced in this case. They concede that time records have been produced, but nothing else.

Defendant suggests that Plaintiffs apparently do not dispute that the request should be narrowed to include only redacted personnel files of those employees, other than physician employees, who rendered treatment or care to EDD from his birth until his discharge in April 2009. It contends that this limitation is appropriate and consistent with the definition of relevancy.

15

Defendant agrees to produce the redacted files, if they have not already been produced.

Plaintiffs filed no reply memorandum to oppose the commitment by Defendant to produce documents responsive to Request No. 18, with the described redactions and limited to include only employees, other than physician employees, who rendered treatment or care to EDD from his birth until his discharge in April 2009. Accordingly, the Court directs Defendant to produce documents not already produced that are responsive to Plaintiffs' Request for Production No. 18, narrowed to the redacted personnel files of those employees, other than physician employees, who rendered treatment or care to EDD from his birth until his discharge in April 2009.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Defendants to Respond to Discovery (ECF No. 57) is granted in part and denied in part, as set forth herein. The motion is granted as to Request for Admission No. 5 and Request for Production No. 18; it is denied as to Request for Production No. 9. Within **thirty (30) days of this Memorandum and Order**, Defendant Hiawatha Community Hospital shall serve its supplemental response to Plaintiffs' First Request for Admission No. 5, and produce documents responsive to Plaintiffs' First Request for Production No.18, as set forth herein.

**IT IS FURTHER ORDERED THAT** to the extent any party requests fees related to this motion, the Court finds that an award of fees is not appropriate under the circumstances.

Dated in Kansas City, Kansas on this 25th day of April, 2011.

> S/ Gerald L. Rushfelt
> Gerald L. Rushfelt
> United States Magistrate Judge